[Civ. No. 60960. Second Dist., Div. One. Nov. 25, 1981.]

FRANK M. GILLILAND, JR., et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Fadem, Berger & Norton and Michael M. Berger for Plaintiffs and Appellants.

John H. Larson, County Counsel, and Paul T. Hanson, Deputy County Counsel, for Defendant and Respondent.

OPINION

HANSON (Thaxton), J.—Plaintiffs Frank, James and Robert Gilliland appeal an order of dismissal entered after the trial court sustained without leave the general demurrer of defendant County of Los Angeles (hereinafter referred to as County) to their first amended complaint.

FACTS

The facts alleged by plaintiffs in their first amended complaint for inverse condemnation (with a prayer for declaratory relief and injunction) must on this appeal be taken as true. Plaintiffs in their first amended complaint filed September 26, 1979, allege, in substance, as follows:

That the Gillilands are and for seven years have been owners of lots 41, 60 and 61 of tract 7670 of Los Angeles County comprising thirty acres of vacant land; that the subject property being situated in unincorporated county territory is within the zoning and planning jurisdiction of the County; that the property is and at all times relevant has been zoned A2-5, an agricultural zone which permits two single family residences for each five acres of land; that A2-5 is used by the County as a "holding zone" in which the County holds the land to the minimal use permitted by the zoning by withholding zone changes for a proposed new use when the owner comes to the County for a permit to put his land to its highest and best use "unless the County approves the specific proposed land use, site utilization and sometimes aesthetics of the proposed use to be made of the land"; that real property taxes have been assessed to the Gillilands not based on A2-5 uses but based on the highest and best uses for which the land is adapted; that the assessed value and real property taxes of the subject property from the time of its purchase in 1967 through the 1972-1973 tax year increased 600 percent due to increased commercial and industrial development in the surrounding area; and that as a further result of this development the

Gillilands on request granted easements and dedicated portions of the subject property for purposes such as street widening, curbing and utilities.

Plaintiffs allege further that in February 1973 they applied to the county regional planning commission for a zoning change of the subject property to CPD, a commercial planned development zone; that this request was on February 20, 1973, denied on the stated grounds that the property lies within the primary impact area of the proposed Palmdale Intercontinental Airport and that plaintiffs did not adequately demonstrate need for additional commercial zoning in the area; that the Gillilands appealed this decision to the county board of supervisors (hereinafter the Board); that on April 30, 1973, the Board heard testimony opposing the requested zone change from representatives of Air Force Plant 42 and from aircraft companies with facilities in the adjacent area, namely Lockheed, McDonnell Douglas, Rockwell International, and Northrop; that Air Force Plant 42 is an airport on which commercial manufacturing is conducted including assembly of Lockheed L 1011; and that the Board denied the Gillilands' request for a zone change based on testimony that the property is within an area that receives noise of 100 db(A) or more from Air Force Plant 42.

Plaintiffs in addition allege that by reason of the County's refusal to rezone, the Gillilands' private property has been unlawfully taken for public use without just compensation and without due process and equal protection of law under the federal and state Constitutions; that as the result of the refusal to permit commercial use the Gillilands were deprived of beneficial use, e.g., the use, enjoyment and right to develop and sell the subject property; that plaintiffs are informed and believe that the acts of the County were intended to stultify the lawful use of the Gillilands' land, to reduce its value and to render it unsaleable and unusable for any reasonable private use and to accomplish a de facto transformation of the subject land into public property without payment of just compensation; that the conduct of the County was unreasonable, unlawful, arbitrary and discriminatory; that the Gillilands have been damaged thereby in an amount in excess of $825,000; that prior to filing this action the plaintiffs filed a claim with the County which was rejected.

Plaintiffs allege further that the County took the plaintiffs' property to provide space for the approach and departure of jet aircraft to and from Air Force Plant 42; that this impressed the land with a servitude

for airport use in furtherance of the County's determination of its own best interest in keeping Air Force Plant 42 operating in the County; that the County "took the use of the Gilliland's property by the agreement between the County and the U.S." and placed the use of the Gillilands' property in the United States; that by reason of the foregoing the County's zoning ordinance is invalid as applied to the Gillilands' property; that plaintiffs have no adequate remedy at law because of *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25]; and that plaintiffs were deprived of their property without just compensation or due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the federal Civil Rights Act (42 U.S.C. § 1983).

Plaintiffs on the basis of these allegations sought just compensation for the taking, damages under the federal Civil Rights Act, declaratory judgment and injunctive relief invalidating the County's zoning ordinance as applied to the subject property and costs and expenses of litigation including attorneys' fees. Defendant County filed a general demurrer which was sustained by the trial court and plaintiffs have appealed.

## ISSUE

Plaintiffs on appeal contend that the trial court erred in failing to apply applicable federal law and therefore sustaining the demurrer and dismissing their action.

## DISCUSSION

The Gillilands contend that the trial court disregarded the legal authority of federal cases when it sustained the County's demurrer. It is well established that enactment of any general measure which purports to zone or rezone property is a legislative act. (*Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511, 516 [169 Cal.Rptr. 904, 620 P.2d 565]; *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973].) The application of this principle has been held, in the case of a rezoning, not to constitute a denial of due process under the United States and California Constitutions. (*Arnel Development Co.* v. *City of Costa Mesa, supra*, 28 Cal.3d at p. 519.) California views zoning ordinances as legislative while variances and subdivision map approvals are adjudicative. Therefore, adequate protection under state and federal

constitutional requirements is fulfilled when zoning is enacted by the city council by the provisions for the landowner to have notice and hearing. When zoning is enacted by initiative, these requirements are fulfilled by the equal opportunities of those favoring and opposing the zoning to be heard by the electorate. Those affected by the zoning or rezoning also enjoy the option to obtain administrative or judicial relief in the event the zoning restriction produces arbitrary or capricious results.

In the event hardship is occasioned by zoning restrictions administrative relief is potentially available. (*Id.*, at p. 520.) The landowner has "[t]he right to seek judicial invalidation of zoning which is arbitrary or unreasonable (see *Hamer* v. *Town of Ross* (1963) 59 Cal.2d 776, 781 [ . . . ]), which bears no reasonable relationship to the regional welfare (see *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582, 609-610 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]), or which deprives them of substantially all use of their land (see *Agins* v. *Tiburon* (1979) 24 Cal.3d 266, 273 [ . . . ], affd. (1980) 447 U.S. 255 [65 L.Ed.2d 106 . . . ]). . . ." (*Arnel Development Co.* v. *City of Costa Mesa, supra,* 28 Cal.3d at p. 521.)

Nonetheless zoning regulations have traditionally been sustained against constitutional attacks. (See, e.g., *Euclid* v. *Ambler Realty Co.* (1926) 272 U.S. 365, 386 [71 L.Ed. 303, 310, 47 S.Ct. 114, 54 A.L.R. 1016].) The California Supreme Court has previously held that inverse condemnation does not lie in zoning actions in which it is alleged that the market value of property is reduced. (See *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508 [125 Cal.Rptr. 365, 542 P.2d 237].)

▮ Therefore, the enactment by a city of a zoning ordinance reducing the density of approved development on an owner's land, does not constitute a taking without just compensation in violation of the Fifth and Fourteenth Amendments which would support an action in inverse condemnation. (*Agins* v. *Tiburon* (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138].) The United States Supreme Court in *Agins* affirmed the holding of the California Supreme Court that the zoning ordinance on its face did not constitute a taking without just compensation (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25]). ▮ The California decision in *Agins* held that a landowner who challenges the constitutionality of an ordinance may not sue in inverse condemnation and thereby transmute an excessive use of the police power into a lawful taking for which compen-

sation in eminent domain is required. (See also the discussion relative to monetary compensation in *San Diego Gas & Electric Co.* v. *San Diego* (1981) 450 U.S. 621 [67 L.Ed.2d 551, 101 S.Ct. 1287].)

In the case at bench, just as in *Agins*, the zoning ordinance does not on its face take plaintiffs' property without just compensation. The Gillilands do not allege that the ordinance on its face deprives them of substantially all use of the land. It is clear from a reading of the ordinance describing A2-5 zoning that there are many uses to which the land may be put in addition to residential use.[1]

The specific zoning regulations here at issue constitute exercise of the county's police power to protect local residents from the adverse effects of urbanization in specifying low density where the noise level is high. (See, e.g., *Agins* v. *Tiburon, supra*, 447 U.S. 255, 261 [65 L.Ed.2d 106, 112].) ▮ Although this is the result of the proximity of the airport, this exercise of the police power does not constitute a taking compensable in damages.

▮ In any event, in California the remedy of inverse condemnation is not available in these circumstances and declaratory relief or mandamus is the sole means of relief. We note that here, just as in *Agins*, the Gillilands do not allege that they have submitted to the County a plan to use or to improve their property according to the manner permitted by zoning regulations; or that such a plan has been rejected. Consequently, there is as yet apparently no circumstance which has generated a concrete controversy regarding the application of the specific zoning provisions. (*Agins* v. *Tiburon, supra*, 447 U.S. at p. 260 [65 L.Ed.2d at p. 111].) ▮ In view of this circumstance, there is no ground for declaratory relief.

By a parity of logic, mandamus has not been effectively pleaded by the Gillilands since they allege that they sought a zone change rather than a building permit or variance or conditional use permit. Since zoning, as we have pointed out, is a legislative act, mandamus is not an appropriate remedy in the case at bench. (*Toso* v. *City of Santa Barbara* (1980) 101 Cal.App.3d 934, 942 [162 Cal.Rptr. 210]; *City Coun-*

---

[1]Sections 120.18, 233.6, 242, 242.2, 242.3, 261.9 and 262 of the zoning ordinances of Los Angeles County, ordinance No. 1494, were attached as exhibits 1 and 2 to County's brief on appeal. Deputy county counsel's written motion for this court to take judicial notice of the foregoing sections under Evidence Code section 452, subdivision (b), was granted in open court during oral argument on November 24, 1981.

*cil* v. *Superior Court* (1960) 179 Cal.App.2d 389, 396-399 [3 Cal.Rptr. 796].)

Finally, since the ordinance is constitutional on its face and there is no allegation of a threatened harmful act by the County, the complaint does not allege facts which would support an injunction.

The Gillilands in their brief concede that they have no remedy at law under these circumstances by virtue of the legal principles enumerated in *Agins* which limit their remedies. They have, therefore, sought to set forth a claim for damages under the federal Civil Rights Act (42 U.S.C. § 1983). That statute, in substance, merely establishes that a remedy is available when any person, under color of state law, deprives the complaining party of rights, privileges, or immunities secured by federal law. The right to just compensation for a governmental taking of private property arises not from the federal Civil Rights Act but from the protections of the Fifth and Fourteenth Amendments. (2c) However, the California Supreme Court in *Agins* held that monetary damages constituted an inappropriate remedy for an alleged taking which was the result of local land-use regulation expressing concern with the chilling effect such awards might have on the proper exercise of the police power. (*Agins* v. *City of Tiburon, supra*, 24 Cal.3d 266, 276-277.) In view of that decision, the remedy of monetary damages would be unavailable in any event, whether the action were brought in inverse condemnation or under the federal Civil Rights Act. Since it does not appear that there was any taking in this case, the distinction is immaterial.

Ultimately, the Gillilands fail to allege facts which constitute an actual taking of property. ■ An owner of undeveloped land, such as the acreage in the case at bench, has no vested right in existing zoning. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546].) A fortiori, the owner can have no vested right in more valuable zoning which he may have anticipated in the future and which would be different from that in effect at the time he became the owner. (*HFH, Ltd.* v. *Superior Court, supra*, 15 Cal.3d 508, 516.) There is, furthermore, no right to have real property zoned for its highest and best use. (*Ibid.*) The allegations that representatives of the United States Air Force and aircraft companies with facilities in the adjacent area testified opposing the requested zone change contributes nothing with respect to the causes of action the Gillilands attempt to state since neighboring land-

owners are entitled to present their views at a hearing on rezoning. (See *NBH Land Co.* v. *United States* (Ct. Cl. 1978) 576 F.2d 317, 318-319.)

In summary, the Gillilands essentially allege that their property would have a higher monetary value if it were rezoned commercial. Such circumstances are insufficient to support a cause of action for a zoning change. (*Euclid* v. *Ambler Realty Co.* (1926) 272 U.S. 365, 384-385 [71 L.Ed. 303, 309-310, 47 S.Ct. 114, 54 A.L.R. 1016].)

### DISPOSITION

The judgment (order of dismissal) is affirmed.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 17, 1981, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1982. Bird, C. J., was of the opinion that the petition should be granted.